IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

DAVID E. TROUT and
AUDRA TROUT,

      Plaintiffs,

v.              CIVIL ACTION NO.   5:14-cv-13501

JOHN NEWCOMB ENTERPRISES,
INC., et al.,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Defendants' *Notice of Removal* (Document 1) with attached exhibits, the Plaintiffs' *Motion to Remand* (Document 4) with attached exhibits, the *Memorandum of Law in Support of Plaintiff' Motion to Remand* (Document 5), the *Defendants' Joint Response in Opposition to Plaintiffs' Motion to Remand* (Document 12) with attached exhibit, and the Plaintiffs' *Reply in Support of Plaintiffs' Motion to Remand* (Document 15) with attached exhibits. The Court has further reviewed the supplemental affidavit in support submitted by the Plaintiffs (Document 20).[1]   For the reasons stated herein, the Court finds that the Court lacks subject matter jurisdiction, and this matter must, therefore, be remanded to state court.

*I.*   *FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

As the Defendants note, this case has somewhat of a convoluted procedural history. Plaintiff David Trout alleges that he was injured on April 2, 2011, at a Burger King restaurant in

---

[1] *Defendant Greenbrier Valley Solid Waste, Inc.'s Motion to Dismiss* (Document 6), asserting fraudulent joinder, presents overlapping issues.  Given the Court's ruling herein with respect to the motion to remand, the motion to dismiss should be resolved without an express ruling from this Court.

Lewisburg, West Virginia. (*See* Complaint, ¶¶ 22–23, Document 1-5.) He alleges that a concrete and cinder block wall near the entrance fell on him, trapping him and causing serious injuries. (*Id.* at ¶¶ 15, 19, 22–23.) He first filed a complaint in the Circuit Court of Greenbrier County, West Virginia, on February 4, 2013, asserting claims against Burger King Corporation; Burger King Holdings, Inc.; Burger King Worldwide Holdings, Inc.; Newcomb Enterprises, Inc.; John; JW&N Inc., and John W. Newcomb (collectively, Burger King Defendants)—none of which are West Virginia residents. (*See* Defs' Resp. at 1–2.) The Defendants removed the case to federal court, but agreed to a voluntary dismissal to permit the Plaintiffs to refile in state court when the Plaintiffs asserted that they had developed new information to support a claim against Greenbrier Valley Solid Waste, Inc. (GVSW), a West Virginia corporation. (*Id.* at 2.) The Plaintiffs filed the instant suit in the Circuit Court of Greenbrier County, West Virginia, on March 29, 2013.

A review of the state court docket (Document 1-5) indicates that discovery was ongoing when the Defendants removed the case. Trial in state court was scheduled to begin on July 28, 2014. A letter attached to the Plaintiffs' motion for remand suggests that the parties hoped to resolve the case through mediation and, therefore, delayed certain discovery. (March 21, 2014 Masters Letter, Document 4-1) ("We mistakenly agreed to spend time mediating the case instead of addressing discovery issues.") The Defendants filed their notice of removal on March 28, 2014. They now contend that GVSW was fraudulently joined and can be disregarded for jurisdictional purposes.

The Plaintiffs assert that GVSW "provided garbage and waste pick-up services to the…other defendants and operated vehicles in and around said restaurant and facility." (Compl. ¶ 11.) In doing so, it "drove or caused to be driven large trucks onto the aforesaid property and in

and around its parking lot." (*Id.* at ¶ 17.) The Plaintiffs claim that GVSW negligently drove the trucks "into and against" the concrete and block wall that later fell onto Mr. Trout. (*Id.* at ¶ 18.) Further, GVSW "had the duty to safely and carefully operate its vehicles on the aforesaid property, to inspect the wall when, upon information and belief, they struck it, to inform and advise the other defendants of the striking of the wall and of the danger to persons in and around the wall." (*Id.* at ¶ 28.)

To their notice of removal, the Defendants attached three affidavits from Burger King employees, referenced by the Plaintiffs during discovery as individuals with knowledge about the allegations against GVSW. In similarly worded affidavits, each of the three employees disclaims any personal knowledge that GVSW trucks hit the trash enclosure and/or wall,[2] and two of the three disclaim any knowledge of complaints regarding GVSW and/or the trash enclosure. (Kristine Ward Affidavit (Document 1-12); Cristal Walton Affidavit (Document 1-13); and Melissa Miller Affidavit (Document 1-14.))

The Plaintiffs supplied transcripts and recordings of statements from Ms. Miller and Ms. Ward (Pl.'s Ex. 1 & 2, Document 4-1),[3] as well as an affidavit from their expert (Lee Martin Affidavit, Pl.'s Ex. 5, Document 4-1). Ms. Miller's statement indicates that she overheard two managers discussing trash trucks hitting the wall. (Miller Statement at 4–6.) She also indicated that she had noticed the wall leaning and had observed "marks where it looked like something ha[d] hit it." (*Id.* at 7.) Ms. Ward's statement is less definitive, but she indicates that she recalled someone telling her the trash truck had hit the wall.[4] (Ward Statement at 3.) The Plaintiffs'

---

2   It is the Court's understanding that the wall that allegedly fell onto Mr. Trout was part of the trash enclosure. The parties sometimes refer to it as an enclosure and sometimes as a wall. The Court has done the same.
3   The recorded interview with Melissa Miller took place on March 25, 2014. She indicated that she had spoken with the investigator some months earlier. (Miller Statement at 2.) Her affidavit is dated March 26, 2014. Ms. Ward's statement does not clearly indicate a date. It was transcribed on April 26, 2014. Her affidavit is dated March 7, 2014.
4   Interestingly, Ms. Ward's affidavit states that she was not employed at the Lewisburg Burger King in 2011.

expert indicates that metal posts adjacent to the wall had marks and scrapes, that his examination indicated that picking up and resetting the dumpster caused vibration in the wall, that reports prepared years prior to the Plaintiff's injury indicated stress cracks on the trash enclosure. (Martin Affidavit at 2–3.) He opines that "the combination of forces resulting from the dumpster being reset on the slab, being pushed into the wall, or into the bollards next to the wall, caused the wall to become unstable, and was a cause of the wall falling on Mr. Trout." (*Id.* at 3.)

The Plaintiff later supplied affidavits from Merrick Johnson (Document 15-3), and from Joshua Curry (Document 18-1), both Burger King employees at the time of the incident. Mr. Johnson states that he was responsible for taking trash to the dumpster. (Johnson Affidavit.) In doing so, he observed scratches in the enclosure, "approximately the same height as a bumper on a trash truck" and "approximately the same height as the channels were on the side of the dumpster," as well as cracks in the wall. (*Id.*) Mr. Curry was also responsible for taking trash to the dumpster. (Curry Affidavit.) While in the parking lot one or two weeks prior to the incident, he "heard a loud thump which sounded like a very big baseball bat hitting metal and knew that the trash truck had hit the wall with the dumpster." (*Id.*) He further states that he "learned that the trash company told the manager, Donna Brewster, that they hit the wall" after he went inside. (*Id.*)

## II.  STANDARD OF REVIEW

An action may be removed from state court to federal court if it is one over which the district court would have had original jurisdiction. 28 U.S.C. § 1441(a).[5] This Court has original

---

5  Section 1441 states in pertinent part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

jurisdiction of all civil actions between citizens of different states or between citizens of a state and citizens or subjects of a foreign state where the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a)(1)-(2). Generally, every defendant must be a citizen of a state different from every plaintiff for complete diversity to exist. Diversity of citizenship must be established at the time of removal. *Higgins v. E.I. Dupont de Nemours & Co.*, 863 F.2d 1162, 1166 (4th Cir.1998).

Section 1446 provides the procedure by which a defendant may remove a case to a district court under Section 1441. Section 1446 requires that "[a] defendant or defendants desiring to remove any civil action from a State court shall file . . . a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). Additionally, Section 1446 requires a defendant to file a notice of removal within thirty days after receipt of the initial pleading. It is the long settled principle that the party seeking to adjudicate a matter in federal court, through removal, carries the burden of alleging in its notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter. *Strawn et al. v. AT&T Mobility, LLC et al.*, 530 F.3d 293, 296 (4th Cir. 2008); *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) ("The burden of establishing federal jurisdiction is placed upon the party seeking removal.") (citation omitted). Accordingly, in this case, the removing defendant has the burden to show the existence of diversity jurisdiction by a preponderance of the evidence. *See White v. Chase Bank USA, NA.*, Civil Action No. 2:08-1370, 2009 WL 2762060, at *1 (S.D. W.Va. Aug. 26, 2009) (Faber, J.) (citing *McCoy v. Erie Insurance Co.*, 147 F.Supp. 2d 481,488 (S.D. W.Va. 2001)). In deciding whether to remand, because removal by its nature infringes upon state sovereignty, this Court must

---

28 U.S.C. § 1441(a).

"resolve all doubts about the propriety of removal in favor of retained state jurisdiction." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999).

"The "fraudulent joinder" doctrine permits removal when a non-diverse party is (or has been) a defendant in the case . . . . This doctrine effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). The Fourth Circuit sets a high standard for defendants attempting to demonstrate fraudulent joinder: "[T]he removing party must establish either: that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court, or; that there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Id.* at 464 (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)) (emphasis in original; brackets removed). Courts may consider the record beyond the pleadings to "determine the basis of joinder" and "whether an attempted joinder is fraudulent." *AIDS Counseling & Testing Centers v. Grp. W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990) (internal quotation marks and citations omitted).

The Fourth Circuit has described the standard for fraudulent joinder as "even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Hartley*, 187 F.3d at 424. Furthermore, "all legal uncertainties are to be resolved in the plaintiff's favor in determining whether fraudulent joinder exists" and "courts should resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." *Id.* at 425 (internal quotation marks removed).

The Hartley court went on to explain:

> In all events, a jurisdictional inquiry is not the appropriate stage of litigation to resolve these various uncertain questions of law and

> fact. Allowing joinder…is proper in this case because courts should minimize threshold litigation over jurisdiction. *See Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 464 n. 13, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980) ("Jurisdiction should be as self-regulated as breathing; ... litigation over whether the case is in the right court is essentially a waste of time and resources." (internal quotation marks omitted)). Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss. The best way to advance this objective is to accept the parties joined on the face of the complaint unless joinder is clearly improper. To permit extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules.

*Id.*

### III. DISCUSSION

The Defendants removed this case despite the Plaintiffs' claims against GVSW, a non-diverse defendant. They explain in their notice of removal that "[a]fter nearly a year of conducting discovery in this case, the evidence established shows that there is no "possibility of a right to relief" relating to Plaintiffs' sole claim against Greenbrier," satisfying the standard for fraudulent joinder. (Not. of Removal, 10.) This contention is based on the affidavits they obtained from the witnesses disclosed by the Plaintiffs, which the Defendants contend "conclusively show that Ms. Miller, Ms. Walton and Ms. Ward do not possess the knowledge and information on which Plaintiffs base their allegations against Defendant Greenbrier." (*Id.* at 12.) The Plaintiffs moved to remand, arguing that the Court would be required to weigh evidence and make credibility determinations to find fraudulent joinder based on the evidence supplied by the Defendants. (Mot. to Remand, 2.) In support, the Plaintiffs supplied the Court with interview transcripts, recordings, affidavits, and an expert affidavit that support their allegations against GVSW.[6]

---

6 The Court notes that the audio records and one affidavit were supplied with the Plaintiffs' Reply, and another affidavit was supplied, with leave of the Court, after the reply deadline. Thus, the Defendants had access to only the interview transcripts and expert affidavit for purposes of their response.

The Defendants respond that the Court should disregard the interview transcripts from Ms. Miller and Ms. Ward because the witnesses "were not administered the oath or affirmation as contemplated by Rule 30(b)(5)(iv) of the Federal Rules of Civil Procedure" and the transcripts were not verified. (Def.s' Resp. at 8–9.) Further, the Defendants argue, the witness statements supplied by the Plaintiffs would be inadmissible at trial under the Federal Rules of Evidence because they are based upon hearsay and speculation. (*Id.* at 10–14.) The Defendants claim that there is no meaningful factual discrepancy between the transcribed interviews provided by the Plaintiffs and their witness affidavits, because the Plaintiffs' interviews included information not derived from personal knowledge. (*Id.* at 15.) The Defendants go on to challenge the Plaintiffs' expert's qualifications to testify on the causes of the wall's failure and the basis of his opinions. (*Id.* at 16–18.)

The Plaintiffs reply with an initial attempt to clarify the standard of review, conceding that the Court may review evidence outside the pleadings, but stating that "this does not mean that the court is conducting an actual, premature summary-judgment review of the plaintiffs' claims." (Pl.s' Reply at 1–2.) In accordance with the standard, the Plaintiffs argue, they "should not have to offer any evidence in order to enable a weighing of the evidence or credibility of the witnesses." (*Id.* at 6.) They argue that the evidence they have offered should not be subject to trial admissibility rules. Even if it were, however, they point out that statements made by Burger King employees or agents on a matter within the scope of the employment relationship would be admissible pursuant to Federal Rule of Evidence 801(d)(2)(D). (*Id.* at 7.) In addition, discovery was ongoing; the Plaintiffs note that they had requested dates for depositions of the witnesses and a site visit. (*Id.*) During the pendency of this motion, the Plaintiffs also obtained affidavits of

other Burger King employees with personal knowledge of GVSW trash trucks hitting the wall that comport with the Defendants' view of proper evidence for the Court's consideration.

The Court finds that removal of this matter to federal court was improper. The Court declines the Defendants' invitation to conduct a summary judgment analysis of the evidence against GVSW or to apply trial admissibility rules to the evidence produced for this remand motion. Discovery is not complete in this case. Plaintiffs are not expected to have taken depositions before initiating a case. A plaintiff can be expected to do precisely what these Plaintiffs did: speak with potential witnesses somewhat informally to gather information sufficient to know who to bring claims against, and then develop and supplement that information during the discovery process.

Though courts may consider matters outside the pleadings to determine whether a party has been fraudulently joined, those documents may be used to establish the basis of joinder, not to weigh the evidence against the non-diverse defendant. Assuming that the affidavits supplied by the Defendants accurately and completely reflect the content of their conversations with Ms. Ward, Ms. Miller, and Ms. Walton, the Plaintiffs' interview transcripts clearly indicate that Ms. Miller and Ms. Ward had previously informed the Plaintiffs that Burger King employees believed GVSW trucks hit the trash enclosure. The Court need not weigh the affidavits against the interviews, and certainly cannot dismiss GVSW as fraudulently joined simply because some witnesses appear to have given somewhat conflicting statements.[7] To the extent the affidavits suggest that the Plaintiffs fabricated evidence or falsely attributed statements to witnesses, the transcripts suffice to demonstrate that the Plaintiffs had a proper basis for bringing suit against GVSW. The initial witness statements and inferences drawn therefrom provide an adequate basis

---

7 As noted by the Plaintiffs, the depositions they requested, which would have been attended by both parties, could have provided greater clarity.

for the allegations made in the complaint. The complaint, in turn, contains allegations for which there is a possibility that the Plaintiffs could recover in state court. The other evidence produced by the Plaintiffs, presumably developed through the ongoing discovery process, merely bolsters the Plaintiffs' claims.

The Defendants have failed to meet their burden of demonstrating either that the Plaintiffs could not possibly establish a cause of action against GVSW or that there was outright fraud in the Plaintiffs' pleading of jurisdictional facts. Therefore, GVSW should not and cannot be dismissed as fraudulently joined, and this Court lacks subject-matter jurisdiction. This matter must be remanded to state court.

## *CONCLUSION*

Following thorough review and careful consideration, the Court **FINDS** that it lacks subject matter jurisdiction over the above-styled matter. Accordingly, the Court **ORDERS** that the Plaintiffs' *Motion to Remand* (Document 4) be **GRANTED**, and that this case be **REMANDED** to the Circuit Court of Greenbrier County, West Virginia, for further proceedings.

The Court observes that the Plaintiffs have requested an award of costs and fees associated with the removal of this action. (*See* Pl.s' Reply at 9) (Document 15.) Should the Plaintiffs continue to seek such an award, the Court **ORDERS** that they submit their calculation of applicable costs **no later than July 25, 2014.**

The Court **DIRECTS** the Clerk to send a certified copy of this Order to the Clerk of the Circuit Court of Greenbrier County, West Virginia, to counsel of record and to any unrepresented party in this action.

                ENTER:     July 9, 2014

                IRENE C. BERGER
                UNITED STATES DISTRICT JUDGE
                SOUTHERN DISTRICT OF WEST VIRGINIA